**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GARY R. BOWLES,

               Petitioner,

v.                                                Case No. 3:19-cv-936-J-32JBT

MARK S. INCH, Secretary, Florida
Department of Corrections, et al.,

               Respondents.

_____

**ORDER**
**(Execution Scheduled for August 22, 2019)**

      Petitioner, a death row inmate who is scheduled for execution on August 22, 2019, filed an Emergency Petition Under 28 U.S.C. §§ 2254 and 2241 for a Writ of Habeas Corpus (Doc. 1) on August 14, 2019.[1] He also filed an Emergency Motion for a Stay of Execution (Doc. 2). Relying mainly on <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002), Petitioner claims that his death sentence violates the Eighth Amendment because he is intellectually disabled. Respondents filed a Motion to Dismiss the Successive Habeas Petition for Lack of Jurisdiction (Doc. 8) and a Response to the Motion to Stay the Execution (Doc. 9). Petitioner filed a Consolidated Reply (Doc. 10). Upon review of the parties' filings and applicable law, the Court finds that the Petition is second or

---

[1] Citations to all documents filed in this case are to the docket and page numbers as assigned by the Court's electronic case filing system.

successive, and therefore, the Court lacks jurisdiction to hear it without prior authorization from the Eleventh Circuit.

### Procedural History

The facts and procedural history leading to Petitioner's death sentence are set forth in the Florida Supreme Court's decision affirming that sentence. See Bowles v. State, 804 So. 2d 1173, 1174-75 (Fla. 2001). This Court summarizes only those facts and procedural history necessary to resolve whether the Petition is second or successive.

On May 17, 1996, Petitioner entered a plea of guilty to the 1994 first degree murder of Walter Hinton. Bowles v. State, 716 So. 2d 769 (Fla. 1998); see State v. Bowles, No. 16-1994-CF-12188 (Fla. 4th Cir. Ct.). Following the penalty phase proceedings, a jury recommended that Petitioner be sentenced to death by a vote of ten-to-two, and the judge followed that recommendation, sentencing him to death on September 6, 1996. See Bowles, No. 16-1994-CF-12188. The Florida Supreme Court affirmed Petitioner's first degree murder conviction, but reversed his death sentence and remanded for a new penalty phase. Bowles, 716 So. 2d at 773. The state court conducted a second penalty phase proceeding, and on May 27, 1999, a jury unanimously recommended that Petitioner be sentenced to death. See Bowles, No. 16-1994-CF-12188. The judge followed that recommendation and imposed the death penalty on September 7, 1999. Id. Petitioner filed a second direct appeal, and the Florida Supreme Court affirmed his death sentence through a written opinion issued

on October 11, 2001. <u>Bowles</u>, 804 So. 2d at 1174-75. The United States Supreme Court

denied certiorari review on June 17, 2002. <u>Bowles v. Florida</u>, 536 U.S. 930 (2002).

On December 9, 2002, Petitioner filed his initial state motion for postconviction

relief under Florida Rule of Criminal Procedure 3.851. <u>See</u> <u>Bowles</u>, No. 16-1994-CF-

12188. On June 25, 2003, Petitioner filed an amended Rule 3.851 motion, and he filed

a second amended Rule 3.851 motion on August 29, 2003. <u>Id.</u> Thereafter, following an

evidentiary hearing, the trial court denied his second amended Rule 3.851 motion on

August 12, 2005. <u>See id.</u> The Florida Supreme Court affirmed the denial through a

written opinion issued on February 14, 2008. <u>Bowles v. State</u>, 979 So. 2d 182 (Fla.

2008). Petitioner filed his first federal habeas corpus petition under 28 U.S.C. § 2254

on August 8, 2008. <u>See</u> <u>Bowles v. Sec'y Fla. Dep't of Corr.</u>, No. 3:08-cv-791-J-25 (M.D.

Fla.) (Doc. 1).[2] It contained no <u>Atkins</u> claim. This Court denied habeas relief on all of

---

[2] Petitioner raised the following ten grounds in his federal habeas petition: (1) Petitioner's rights under the Sixth and Fourteenth Amendments were denied, *i.e.*, his right to an impartial jury and his due process right to a jury from which no jurors have been systematically removed by the state, when the state used peremptory challenges to remove prospective jurors who, while in favor of the death penalty, expressed reservations about recommending capital punishment; (2) the trial court erred in permitting the state to introduce, at the resentencing hearing, evidence of two homicides, which were inadmissible at the original sentencing hearing, in violation the Eighth and Fourteenth Amendments; (3) the trial court erred in finding the murder to have been committed in an especially heinous, atrocious, or cruel manner, in violation of the Eighth and Fourteenth Amendments; (4) the trial court erred in giving the standard jury instruction to define the heinous, atrocious, or cruel aggravating circumstance, in violation of the Eighth and Fourteenth Amendments; (5) Florida's death penalty scheme, as applied, violated Petitioner's constitutionally guaranteed right to a fair and impartial trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the statute under which he was sentenced, Fla. Stat. § 921.141, did not meet the heightened reliability requirements of a capital sentencing scheme and failed to adequately safeguard his right to a fair trial by permitting unreliable and prejudicial evidence to be used against

his claims, but issued a certificate of appealability on ground one regarding Petitioner's Sixth and Fourteenth Amendment right to an impartial jury. Id. at Doc. 18. The Eleventh Circuit Court of Appeals denied Petitioner's request for an expanded COA and affirmed this Court's denial of federal habeas relief through a written opinion issued on June 18, 2010. Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313 (11th Cir. 2010).

On March 19, 2013, Petitioner filed a successive Rule 3.851 motion, which the trial court denied on July 17, 2013. Bowles, No. 16-1994-CF-12188. Petitioner did not appeal the denial. He filed a second successive Rule 3.851 motion pursuant to Hurst v. Florida, 136 S. Ct. 616 (2016), and Hurst v. State, 202 So. 3d 40 (Fla. 2016), on June 14, 2017. See Bowles, No. 16-1994-CF-12188. The trial court denied Petitioner's second successive Rule 3.851 motion, and the Florida Supreme Court affirmed the denial on January 29, 2018. Bowles v. State, 235 So. 3d 292 (Fla. 2018).

---

him; (6) ineffective assistance of appellate counsel for failure to allege the issue of whether the state's introduction of gruesome photographs to the jury had any relevance to the state's case, and whether Petitioner was prejudiced thereby; (7) the trial court erred in finding Petitioner committed the murder during the course of an attempted robbery and for pecuniary gain, in violation of the Eighth and Fourteenth Amendments; (8) the Supreme Court of Florida's finding that Petitioner did not prove the two proposed statutory mitigating circumstances of "extreme emotional disturbance" and "diminished capacity" was a ruling contrary to clearly established federal law as well as an unreasonable decision in light of the evidence presented in the state courts; (9) the death penalty imposed on Petitioner is a disproportionate sentence and it constitutes a cruel or unusual punishment contrary to Art. 1, § 17 of the Florida Constitution, as well as a cruel and unusual punishment contrary to the Eighth and Fourteenth Amendments to the United States Constitution; and (10) ineffective assistance of trial counsel for failure to introduce Dr. McMahon's testimony concerning mental mitigation at the Spencer v. State, 615 So. 2d 688 (Fla. 1993), hearing, which would have supported the proposed two statutory mitigating circumstances.

On October 19, 2017, Petitioner filed a third successive Rule 3.851 motion asserting, for the first time, a claim of intellectual disability under <u>Moore v. Texas</u>, 137 S. Ct. 1039 (2017); <u>Hall v. Florida</u>, 572 U.S. 701 (2014); and <u>Atkins</u>, 536 U.S. at 304. <u>See</u> <u>Bowles</u>, No. 16-1994-CF-12188.[3] While his third successive Rule 3.851 motion was pending, Governor DeSantis signed a death warrant on June 11, 2019, and the execution was set for August 22, 2019. The trial court permitted Petitioner to amend his pending third successive Rule 3.851 motion, and following a case management conference pursuant to <u>Huff v. State</u>, 622 So. 2d 982 (Fla. 1993), the trial court summarily denied his third successive Rule 3.851 motion as untimely. <u>Bowles</u>, No. 16-1994-CF-12188. The Florida Supreme Court affirmed the trial court's denial through a written opinion issued on August 13, 2019. <u>Bowles v. State</u>, --- So. 3d ---, 2019 WL 3789971 (Fla. 2019). Petitioner's second federal habeas petition followed the next day.

### *Second or Successive Petitions Under AEDPA*

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). AEDPA bars the filing of a second or successive habeas petition, absent approval from the appropriate court of appeals. <u>See</u> 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application

---

[3] At the penalty phase, Petitioner presented evidence to support the statutory mental mitigator of "substantially diminished capacity to appreciate the criminality of the acts at the time of the murder." <u>Bowles</u>, 804 So. 2d at 1176. However, in support of this statutory mitigator, Petitioner argued his "level of intoxication at the time of the murder substantially reduced his ability to appreciate the criminality of his conduct," not that he was intellectually disabled. <u>Id.</u> at 1181.

permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); see also Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1278 (11th Cir. 2014) (recognizing that "[s]ubject to [certain] exceptions[,] . . . a district judge lacks jurisdiction to decide a second or successive petition filed without [the Eleventh Circuit's] authorization").

> The phrase "second or successive" is not self-defining. It takes its full meaning from [Supreme Court] case law, including decisions predating the enactment of the [AEDPA]. The Court has declined to interpret "second or successive" as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application.

Panetti v. Quarterman, 551 U.S. 930, 943-44 (2007) (citations omitted).

### *Parties' Positions*

Petitioner acknowledges that he did not raise his Atkins claim in his first federal habeas petition filed in 2008. He also does not suggest that the Eleventh Circuit has authorized him to file a second or successive petition. Instead, Petitioner claims that the instant Petition is not "second or successive," and thus he does not need the Circuit's approval.

Petitioner likens his Atkins claim to a Ford[4] claim in an attempt to meet the exception recognized by the United States Supreme Court in Panetti, 551 U.S. at 945. In Panetti, the Court concluded that AEDPA's bar on second or successive habeas

---

[4] Ford v. Wainwright, 477 U.S. 399 (1986).

petitions did not apply "in the unusual posture presented [t]here: a § 2254 application raising a <u>Ford</u>-based incompetency claim filed as soon as that claim is ripe." <u>Id.</u> Because a <u>Ford</u> claim is not ripe until an execution is imminent, a petitioner is likely unable to bring such a claim in his first federal habeas proceeding. <u>See</u> <u>id.</u> at 946-47. Thus, a second-in-time petition raising a <u>Ford</u> claim that is filed when the claim is first ripe (when execution is imminent) is not barred as "second or successive." <u>Id.</u> at 947.

Petitioner argues that his intellectual disability "claim was not ripe when he filed his initial [federal] habeas petition." Doc. 1 at 44. He asserts that his "claim that the Eighth Amendment forbids the execution of an intellectually disabled person became viable when his death warrant was issued. Just as separate claims based on <u>Ford</u> may be raised at the time of sentencing and execution, separate claims based on <u>Atkins</u> may also be raised prior to the imposition of the sentence of death and prior to the actual execution of that sentence." <u>Id.</u> He further contends that he "is exempt from execution due to the fact of his intellectual disability," and "[b]ecause the basis for his claim <u>did not exist prior to his warrant being signed</u>, [Petitioner]'s numerically second motion is not 'second or successive,' and AEDPA's gatekeeping provision does not apply." <u>Id.</u> at 45 (emphasis added). Petitioner also asserts that because he is intellectually disabled, he is "actually innocent of the death penalty"; therefore, the bar against second or successive petitions should not be applied because it would be a miscarriage of justice. <u>See</u> <u>id.</u> at 46-48. Alternatively, Petitioner seeks to proceed under

28 U.S.C. § 2241, seeking to avoid the "second or successive" bar under § 2244. <u>See</u> <u>id.</u> at 48-59.

Respondents counter that the Petition is second or successive, and this Court is without jurisdiction to consider it. <u>See</u> Doc. 8. Respondents assert that <u>Panetti</u> does not extend to Petitioner's <u>Atkins</u> claim, because his <u>Atkins</u> claim was ripe and could have been raised in his first federal habeas petition filed in 2008. <u>See</u> <u>id.</u> at 4-5. Moreover, Respondents contend that there is no miscarriage of justice exception applicable to the second or successive bar. <u>Id.</u> at 6-7. Finally, Respondents assert that Petitioner's attempt to invoke § 2241 to evade the statutory limitations relating to the filing of second or successive petitions is foreclosed by precedent. <u>Id.</u> at 13-20.

### *Discussion*

Intellectual disability at the time the crime is committed (<u>Atkins</u>) is different from incompetency at the time of execution (<u>Ford</u>). The first renders an inmate ineligible for a death sentence; the second renders a death-sentenced inmate ineligible for execution. Thus, the <u>Atkins</u> claim ripens early on while the <u>Ford</u> claim only becomes ripe when execution is imminent. This distinction drives the analysis of whether Petitioner's <u>Atkins</u> claim is second or successive.

The United States Supreme Court "decided in <u>Ford</u> . . . that the Eighth Amendment's ban on cruel and unusual punishments precludes executing a prisoner who has 'lost his sanity' after sentencing." <u>Madison v. Alabama</u>, 139 S. Ct. 718, 722 (2019). Under <u>Ford</u>, "[t]he critical question is whether a 'prisoner's mental state is so distorted by a mental illness' that he lacks a 'rational understanding' of 'the State's

rationale for [his] execution.' Or similarly put, the issue is whether a 'prisoner's concept of reality' is 'so impair[ed]' that he cannot grasp the execution's 'meaning and purpose' or the 'link between [his] crime and its punishment.'" <u>Id.</u> at 723 (quoting <u>Panetti</u>, 551 U.S. at 958-60). Because competency can be lost and regained over time, it follows that a <u>Ford</u> claim is not ripe until execution is imminent:

> Mental competency to be executed is measured at the time of execution, not years before then. A claim that a death row inmate is not mentally competent means nothing unless the time for execution is drawing nigh. It is not ripe years before the time of execution because mental conditions of prisoners vary over time. The reason the <u>Ford</u> claim was not ripe at the time of the first petition in <u>Panetti</u> is not that evidence of an existing or past fact had not been uncovered at that time. Instead, the reason it was unripe was that no <u>Ford</u> claim is ever ripe at the time of the first petition because the facts to be measured or proven—the mental state of the petitioner at the time of execution—do not and cannot exist when the execution is years away.

<u>Tompkins v. Sec'y, Dep't of Corr.</u>, 557 F.3d 1257, 1260 (11th Cir. 2009) (per curiam) (citations omitted). Thus, under <u>Panetti</u>, a <u>Ford</u> claim—"competency to be executed"— is not ripe until execution is imminent, usually after the death warrant is signed.

By contrast, an <u>Atkins</u> claim ripens much earlier and is not dependent on when the death warrant is signed. The Supreme Court in <u>Atkins</u> "recognized that the execution of the intellectually disabled contravenes the Eighth Amendment's prohibition on cruel and unusual punishment." <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2273 (2015); <u>see</u> <u>Atkins</u>, 536 U.S. at 321 (concluding that "the Constitution places a substantive restriction on the State's power to take the life of a[n intellectually disabled] offender"). While an individual's competency can fluctuate over one's lifetime, intellectual disability is permanent and, by definition, has an onset before

the age of 18.[5] See Atkins, 536 U.S. at 318 ("[C]linical definitions of [intellectual disability] require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18."); see also Busby v. Davis, 925 F.3d 699, 713 (5th Cir. 2019) ("Incompetence may occur at various points after conviction, and it may recede and later reoccur. A finding that an inmate is incompetent to be executed does not foreclose the possibility that she may become competent in the future and would no longer be constitutionally ineligible for the death penalty. By contrast, intellectual disability is by definition a permanent condition that must have manifested before the age of 18. A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated." (emphasis added)). Thus, the facts to be measured and proven with respect to intellectual disability at the time of the crime exist long before execution is imminent.

In seeking the benefit of the Panetti exception to the second or successive rule, Petitioner improperly conflates intellectual disability at the time of the crime (Atkins) with competency to be executed (Ford). The Eighth Circuit case of Davis v. Kelley, 854 F.3d 967 (8th Cir. 2017), illustrates the fallacy of this argument. In Davis, the petitioner's first federal habeas petition was pending when Atkins was decided. Id. at 968. Nevertheless, the petitioner failed to raise an Atkins claim in the district court. Id. On appeal, he requested that the Eighth Circuit remand to the district court for

---

[5] Petitioner was 32 years old when he murdered Hinton. See Bowles, No. 16-1994-CF-12188.

further proceedings, "arguing that there was significant evidence of his intellectual disability to render his death sentence unconstitutional in light of <u>Atkins</u>." <u>Id.</u> The Eighth Circuit construed the request to remand as a second or successive petition, and while it recognized that the claim relied on a new rule of constitutional law (<u>Atkins</u>), found that the petitioner could have and should have raised the claim in his first habeas petition. <u>Id.</u>

Years later, the petitioner's death warrant was signed, and he filed, in the Eighth Circuit, a motion to recall the mandate or alternatively for leave to file a successive habeas petition. <u>Id.</u> He acknowledged that he had previously raised a claim challenging his death sentence under <u>Atkins</u>, but he argued that he was raising, for the first time, a claim that <u>Atkins</u> prohibits his execution and that such a claim was not ripe until his death warrant was issued. <u>Id.</u> at 971. The Eighth Circuit denied relief and drew a distinction between the issue of competency and intellectual disability, recognizing that "competency can be lost or regained over time," while intellectual disability requires "the onset of . . . deficits while still a minor." <u>Id.</u> (quotations and citation omitted). The court stated that <u>Ford</u> "focus[ed] on the inmate's competency at the time of execution," while "<u>Atkins</u> focused exclusively on the prisoner's culpability . . . <u>at the time that the crime was committed</u>." <u>Id.</u> The court concluded that "[t]he issue of intellectual disability, therefore, does not suddenly become ripe when the execution date is imminent," and "decline[d] to treat Davis's <u>Atkins</u> claim as though it were a <u>Ford</u> claim." <u>Id.</u> at 972, 973. The <u>Davis</u> decision is consistent with Eleventh Circuit precedent which has confined the <u>Panetti</u> exception

to its facts. See Tompkins, 557 F.3d at 1260; Scott v. United States, 890 F.3d 1239 (11th Cir. 2018) (following Tompkins); Jimenez v. Sec'y, Fla. Dep't of Corr., 758 F. App'x 682 (11th Cir. 2018) (same).

Thus, the Panetti exception to the second or successive rule does not extend to Petitioner's Atkins claim. Atkins was decided 6 years before Petitioner filed his first federal habeas petition. Sufficient factual predicate for the claim also predated his first federal habeas petition.[6] Petitioner could have, but failed to, raise it in his first federal petition. Contrary to Petitioner's argument, Doc. 1 at 44, the recent issuance of Petitioner's death warrant has no bearing on the ripeness of his claim of intellectual disability.[7]

Insofar as Petitioner cites to Hall, 572 U.S. at 701,[8] decided in 2014, to overcome the successive nature of his Petition, this is likely a contention that should be addressed by the Eleventh Circuit in the first instance. In any event, the United States

---

[6] To the extent Petitioner relies on some new evidence of IQ testing and other recently created evidence, the underlying factual predicate of the claim existed prior to him filing his first federal habeas petition.

[7] While true that Petitioner filed a motion raising the Atkins issue in state court in 2017, he only litigated the issue in the Florida courts after the death warrant was signed. In any event, Petitioner relies on the Panetti exception to argue that this federal habeas petition, his second, is not barred by the "second or successive" rule of § 2244.

[8] In Hall, the Supreme Court found that Florida's bright-line cutoff of an IQ score of 70 or below to establish "subaverage intellectual functioning" violated the Eighth Amendment. Hall, 572 U.S. at 723. Instead, the Court held that the determination of intellectual disability must be a "conjunctive and interrelated assessment" and where an individual's IQ score falls within the margin of error for intellectual disability, he must be given the opportunity to present evidence of intellectual disability, "including deficits in adaptive functioning over his lifetime." Id.

Supreme Court did not make the rule announced in Hall retroactive to cases on collateral review. See In re Henry, 757 F.3d 1151, 1159 (11th Cir. 2014) (holding the exception in § 2244(b)(2)(A) does not apply to claims of intellectual disability based on Hall because the Supreme Court has not made Hall retroactive); see also In re Hill, 777 F.3d 1214, 1223 (11th Cir. 2015) (recognizing In re Henry as binding precedent and finding that Hall is not retroactive, and therefore, Hill was not entitled to file a successive habeas petition). While Petitioner argues that the Court should follow the Florida Supreme Court's retroactive application of Hall, see Walls v. State, 213 So. 3d 340 (Fla. 2016), this Court is bound by the Eleventh Circuit's application of federal law, not the Florida Supreme Court's. See, e.g., James v. Jones, No. 18-22416-Civ-Scola, 2019 WL 112214, at *2 (S.D. Fla. Jan. 4, 2019) (holding that district court is bound by Eleventh Circuit's holding in In re Henry, not the Florida Supreme Court's decision in Walls). Further, when given the opportunity to consider Hall's application to Petitioner's case, the Florida Supreme Court found that Petitioner should have raised any constitutional claim regarding Florida's standards for determining intellectual disability within sixty days of October 1, 2004, when Florida adopted Florida Rule of Criminal Procedure 3.203. Bowles, --- So. 3d --- , 2019 WL 3789971, at *2 (holding "Bowles' inaction should not be ignored on the basis of the perceived futility of his claim").[9]

---

[9] In his Reply, Petitioner also cites to the Fifth Circuit's very recent decision in In re Johnson, --- F.3d --- , 2019 WL 3814384 (5th Cir. 2019), for the proposition that his intellectual disability claim did not become "available" until the publication of the DSM-5. Doc. 10 at 17-19. The Fifth Circuit decided the case in the context of an application filed with the circuit court of appeals requesting permission to file a

13

*Miscarriage of Justice*

According to Petitioner, "[t]he Supreme Court has made clear that a fundamental miscarriage of justice occurs when the petitioner is actually innocent of the crime, see Schlup v. Delo, 513 U.S. 298, 324-27 (1995), or is ineligible for the death penalty, Sawyer v. Whitley, 505 U.S. 333 (1992)." Doc. 1 at 46-47. While he makes no claim of actual innocence of the crime, he asserts that a habeas claim that is otherwise barred by AEDPA may be heard if the petitioner is able to show actual innocence of the death penalty. Id. at 47. Petitioner contends this Court should hear his claim because he argues that he is categorically exempt from execution based on his intellectual disability. See id. at 47-48.

Sawyer, however, was pre-AEDPA, and since then, the Eleventh Circuit has "made clear that AEDPA forecloses the Sawyer exception in all circumstances, including § 2254 challenges to state death sentences." In re Hill, 715 F.3d at 301; see In re Hill, 777 F.3d at 1225 ("Hill's argument that Sawyer provides an equitable exception to the restriction on successive § 2254 petitions is similarly foreclosed" because "the Sawyer actual-innocence-of-the-death-penalty exception did not survive

---

successive habeas petition based on intellectual disability. Thus, while In re Johnson provides no basis for this Court to act, it can certainly be cited to the Eleventh Circuit if Petitioner applies for permission to file a successive habeas petition.

the AEDPA.").[10] Thus, Petitioner cannot overcome the second or successive bar by arguing he is actually innocent of the death penalty.[11]

### Conclusion on Second or Successive Issue

Petitioner's claim of intellectual disability has never been tested on the merits; the undersigned expresses no view on whether Petitioner would be able to prove such a claim other than to say that, based on the parties' submissions, whether Petitioner is intellectually disabled would be a contested issue. However, this Court is without authority to consider this claim without approval from the Eleventh Circuit because the Petition is second or successive. Petitioner's path is to seek permission from the Eleventh Circuit to file a successive petition.

### Whether Petitioner Can Proceed Under 28 U.S.C. § 2241

Petitioner argues in the alternative that he can bring his petition for a writ of habeas corpus under 28 U.S.C. § 2241.[12] Doc. 1 at 48-59. In doing so, Petitioner seeks

---

[10] Petitioner recognizes the Eleventh Circuit precedent in his Reply, but "submits that it is at odds with other circuits as well as the Supreme Court itself." Doc. 10 at 5. This Court is required to follow the Eleventh Circuit.

[11] Petitioner also argues that "any procedural obstacle to the consideration of a claim of intellectual disability must cede to the categorical protections of the Eighth Amendment." Doc. 1 at 45. He asserts that "Atkins protects intellectually disabled individuals from execution regardless of when the claim is brought." Id. at 46. Petitioner does not cite to any authority to support the proposition that "any procedural obstacle" otherwise required by law must be ignored when an Atkins claim is raised.

[12] Section 2241 provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3).

to attack the constitutionality of his state court judgment, freed from the constraints of AEDPA associated with § 2254. Petitioner relies heavily on the concurring opinion in Thomas v. Crosby, 371 F.3d 782, 788-814 (11th Cir. 2004) (Tjoflat, J., concurring), and the Seventh Circuit's decision in Webster v. Daniels, 784 F.3d 1123 (7th Cir. 2015). However, Petitioner's argument–that § 2241 provides a separate avenue for a state prisoner to challenge the legality of his state court judgment without the strictures of § 2254 and AEDPA–finds no support in the decisions of the Supreme Court or the Eleventh Circuit.

The Supreme Court has stated that the federal courts' "authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'" Felker v. Turpin, 518 U.S. 651, 662 (1996) (quoting 28 U.S.C. § 2254(a)). The Eleventh Circuit's "cases hold that a prisoner collaterally attacking his conviction or sentence may not avoid the various procedural restrictions imposed on § 2254 petitions . . . by nominally bringing suit under § 2241." Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351 (11th Cir. 2008) (citing, inter alia, Medberry v. Crosby, 351 F.3d 1049, 1060-61 (11th Cir. 2003)). While Petitioner argues that § 2241 creates a separate vehicle for a person in custody under a state court's judgment to challenge the legality of his sentence without AEDPA's restrictions, the Eleventh Circuit has repeatedly rejected that argument. Johnson v. Warden, Ga. Diagnostic & Classification Prison, 805 F.3d 1317, 1322-23 (11th Cir. 2015); Thomas, 371 F.3d at 785-87; Medberry, 351 F.3d at 1060-61.

In <u>Medberry</u>, the Eleventh Circuit found "[t]here is no evidence of any intent" for § 2254 and § 2241 to provide "independent, alternative remed[ies]." 351 F.3d at 1058. Instead, "the writ of habeas corpus is a single post-conviction remedy principally governed by two different statutes." <u>Id.</u> at 1059. The first, § 2241, provides the general grant of authority for federal courts to issue a writ of habeas corpus in certain situations, including where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." <u>Id.</u> (quoting 28 U.S.C. § 2241(c)(3)). The second, § 2254, "applies to a subset of those to whom § 2241(c)(3) applies–it applies to 'a person in custody <u>pursuant to the judgment of a State court</u>' who is 'in custody in violation of the Constitution or laws or treaties of the United States.'" <u>Id.</u> (quoting 28 U.S.C. § 2254(a)). Section 2254 is not "anything more than a limitation on the preexisting authority under § 2241(c)(3) to grant the writ of habeas corpus to state prisoners." <u>Id.</u> at 1060. Thus, §§ 2241 and 2254 are not "discrete and independent source[s] of post-conviction relief." <u>Id.</u>

Applying "the canon of statutory construction that the more specific takes precedence over the more general," the Eleventh Circuit found that "an application for a writ of habeas corpus by a state prisoner serving his sentence is subject to the requirements of § 2254." <u>Id.</u> (citing <u>Coady v. Vaughn</u>, 251 F.3d 480, 485 (3d Cir. 2001)). Agreeing with <u>Coady</u>, the Eleventh Circuit observed "that 'both Sections 2241 and 2254 authorize [petitioner's] challenge to the legality of his continued state custody,' but that allowing him to file his 'petition in federal court pursuant to Section 2241

without reliance on Section 2254 would . . . thwart Congressional intent.'" <u>Medberry</u>, 351 F.3d at 1060 (quoting <u>Coady</u>, 251 F.3d at 484-85). The court explained:

> Our reading of §§ 2241 and 2254 as governing a single post-conviction remedy, with the § 2254 requirements applying to petitions brought by a state prisoner in custody pursuant to the judgment of a State court, gives meaning to § 2254 without rendering § 2241(c)(3) superfluous. . . . To read §§ 2241 and 2254 other than as we do would effectively render § 2254 meaningless because state prisoners could bypass its requirements by proceeding under § 2241.
>
> If § 2254 were not a restriction on § 2241's authority to grant the writ of habeas corpus, and were instead a freestanding, alternative post-conviction remedy, then § 2254 would serve no function at all. It would be a complete dead letter, because no state prisoner would choose to run the gauntlet of § 2254 restrictions when he could avoid those limitations simply by writing "§ 2241" on his petition for federal post-conviction relief. All of Congress's time and effort in enacting § 2254, amending it in 1966, and further amending it in 1996 with AEDPA would have been a complete waste. Section 2254 would never be used or applied, and all of the thousands of decisions over the past half-century from the Supreme Court and other federal courts interpreting and applying the provisions of § 2254 would have been pointless. Section 2254 would be a great irrelevancy because a state prisoner could simply opt out of its operation by choosing a different label for his petition.

<u>Id.</u> at 1060-61. The court summarized:

> [A] state prisoner seeking post-conviction relief from a federal court has but one remedy: an application for a writ of habeas corpus. All applications for writs of habeas corpus are governed by § 2241, which generally authorizes federal courts to grant the writ—to both federal and state prisoners. Most state prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254. That is, if a state prisoner is "in custody pursuant to the judgment of a State court," his petition is subject to § 2254. If, however, a prisoner is in prison pursuant to something other than a judgment of a state court, e.g., a

> pre-trial bond order, then his petition is not subject to § 2254.

Id. at 1062. The Eleventh Circuit repeated and affirmed these principles in Thomas, 371 F.3d at 785-87 (concluding that "[a] state prisoner cannot evade the procedural requirements of § 2254 by filing something purporting to be a § 2241 petition. If the terms of § 2254 apply to a state habeas petitioner, i.e., if he is 'in custody pursuant to the judgment of a State court'–then [the court] must apply its requirements to him.").

The Eleventh Circuit's application of Medberry in Johnson, 805 F.3d 1317, is on point. There, like here, a death-sentenced state prisoner attempted to circumvent the restrictions on second or successive § 2254 petitions by filing a petition under § 2241. See id. at 1321-22. The prisoner asserted that new evidence supported his claim of innocence. Id. at 1322. "The district court found that Johnson's § 2241 petition was truly a second or successive § 2254 petition that he did not have [the Eleventh Circuit's] authorization to file," and dismissed the petition. Id. The Eleventh Circuit affirmed, explaining:

> Under 28 U.S.C. § 2244(b), a state prisoner who wishes to file a second or successive habeas corpus petition "under Section 2254" must move the court of appeals for an order authorizing the district court to consider such a petition. See 28 U.S.C. § 2244(b)(2), (b)(3)(A). That requirement cannot be evaded by characterizing the petition as one filed under § 2241 instead of § 2254. Johnson's position—that a habeas petitioner can evade any and all of the [AEDPA] restrictions set out in §§ 2244 and 2254 by the simple expedient of labeling the petition as one filed under § 2241—has no merit whatsoever. Among other things, it would render the AEDPA amendments to §§ 2244 and 2254 a nullity and mean that scores of Supreme Court decisions, and thousands of lower court decisions, are utterly pointless.

Johnson, 805 F.3d at 1323.[13]

Applying this settled Eleventh Circuit precedent, Petitioner cannot circumvent AEDPA's requirements merely by labeling his petition as one under § 2241. Petitioner is challenging the legality of his sentence, and Petitioner "is in custody pursuant to the judgment of [a] Florida court. Therefore § 2254 applies to [Petitioner's] petition." Thomas, 371 F.3d at 787.[14] As such, his Petition is subject to the "second or successive" provisions of § 2244, and § 2241 provides him no relief from those requirements.[15]

---

[13] The Eleventh Circuit has consistently adhered to the holdings of Medberry and Thomas in other cases as well. See, e.g., Rhodes v. Hardee C.I. Warden, 722 F. App'x 947, 950 (11th Cir. 2018) ("The habeas petitions of prisoners held in custody under the judgment of a state court must comply with the restrictions in § 2254, which include a one-year limitation period.") (citing Thomas, 371 F.3d at 787, and Medberry, 351 F.3d at 1060, 1064); Morris v. Fla. Dep't of Corr., 519 F. App'x 990, 990 (11th Cir. 2013) ("Prisoners, like Morris, who are in custody pursuant to the judgment of a state court may not avoid the procedural restrictions imposed on § 2254 petitions by nominally bringing suit under § 2241.") (citing Medberry, 351 F.3d at 1060-61, and Antonelli, 542 F.3d at 1351-52).

[14] In his Reply, Petitioner contends that there is a "distinction between a constitutional error and a constitutional bar," such that a state prisoner who asserts a "constitutional bar" to his sentence can proceed under § 2241 without AEDPA's constraints. Doc. 10 at 16. However, the Eleventh Circuit's holdings in Medberry, 351 F.3d at 1062, Thomas, 371 F.3d at 787, and Johnson, 805 F.3d at 1323, leave no room for this purported distinction. Indeed, Johnson involved a death-sentenced prisoner who claimed he was actually innocent of the crime itself. Johnson, 805 F.3d at 1322.

[15] The Seventh Circuit's decision in Webster, 784 F.3d 1123, does not suggest a different result. In Webster, the Seventh Circuit sitting en banc, permitted a federal prisoner to avail himself of § 2255(e)'s savings clause and to file a § 2241 habeas petition to present newly discovered evidence of intellectual disability that would allegedly show he was ineligible for the death penalty. Id. at 1125. However, Webster did not involve a person in custody pursuant to the judgment of a state court who was challenging the legality of his state court judgment. This distinction is not arbitrary: the difference is that § 2255 contains a savings clause whereas § 2254 does not. McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1095 (11th Cir. 2017) (en banc) ("Both remedies include a nearly identical bar on successive

It is

**ORDERED:**

1.     Respondents' Motion to Dismiss the Successive Habeas Petition for Lack of Jurisdiction (Doc. 8) is **GRANTED** as stated herein, and Petitioner's Emergency Petition Under 28 U.S.C. §§ 2254 and 2241 for a Writ of Habeas Corpus (Doc. 1) is **DISMISSED without prejudice** for lack of jurisdiction.[16]

2.     Petitioner's Emergency Motion for a Stay of Execution (Doc. 2) is **DENIED as moot**.

---

attacks, 28 U.S.C. §§ 2244(b), 2255(h), but only the federal remedy includes a saving clause."), cert. denied sub nom. McCarthan v. Collins, 138 S. Ct. 502 (2017). Indeed, the very same circuit that decided Webster also held 13 years earlier that "section 2254 provides the exclusive federal remedy for a person who, being in state custody pursuant to the judgment of a state court, wishes to challenge a sanction that affects the length of his custody." Harris v. Cotton, 296 F.3d 578, 579 (7th Cir. 2002) (emphasis added).

    Additionally, Webster appears to conflict with the Eleventh Circuit's subsequent en banc decision in McCarthan. In McCarthan, the Eleventh Circuit held that a federal prisoner can avail himself of § 2255(e)'s savings clause in only two circumstances: (1) where the prisoner challenges not the legality of his conviction or sentence, but the execution of his sentence, and (2) where the sentencing court is unavailable. 851 F.3d at 1092-93.

[16] A certificate of appealability is not required. See Hubbard v. Campbell, 379 F.3d 1245, 1247 (11th Cir. 2004); ("Section 2253(c) has no application here because the district court's decision dismissing the Amended Petition is not 'a final order in a habeas corpus proceeding' within the meaning of the statute."); see also United States v. Palmer, 773 F. App'x 576, 576 (11th Cir. 2019) (recognizing that a "dismissal for lack of subject matter jurisdiction is not a 'final order' within the meaning of § 2253(c), and a COA is not required to appeal such an order of dismissal"); Hutto v. Lawrence Cty., Ala., 717 F. App'x 960, 960 (11th Cir. 2018) ("A certificate of appealability . . . is not required for an appeal of an order dismissing a petitioner's filing as a successive habeas petition.").

3.     The Clerk shall enter judgment dismissing the Petition without prejudice for lack of jurisdiction and close the file.[17]

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of August, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

c:
Counsel of Record

---

[17] The Court declines to transfer this case to the Eleventh Circuit under 28 U.S.C. § 1631 as requested by Petitioner in his Reply. See Griham v. United States, --- F. Supp. 3d --- , 2019 WL 2469896, at *8-*10 (N.D. Ala. June 13, 2019).